Steven Zamora, Esq.

Before Abraham was, I AM

9450 Pinecroft Dr. Unit 9834

The Woodlands, TX 77380

Telephone:     (858) 382-1064

Facsimiles:    (832) 543-1329

E-mail:        stevenzamora@beforeabrahamwas-iam.org

State Bar of Texas #24120410

Southern District of Texas #24120410

Attorneys for PAMELA LYNN, WILSON LYNN JR.

UNITED STATES DISTRICT COURT

Southern District of Texas

| | |
|---|---|
| PAMELA LYNN, WILSON LYNN JR.<br><br>Plaintiffs<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, INC., SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, INC. (ALTOGETHER "KAISER"), THE OFFICE OF INDEPENDENT ADMINISTRATOR ("OIA"), DR. MARC DAVISON, DR. JULIO VAQUERANO, DR. GAVIN JONAS, DR. ANDREW GIAP, DR. LUCIO LOZA, DR. ROBERTO LIMGENCO BARRETO, DR. ALBERT SUNG-UNJIN, DR. XAVIOUR JAMES WALKER, DR. SRILAKSHMI MOTURU (ALTOGETHER "MEDICAL DOCTORS"), DR. ANDREW BINDMAN ("KAISER | No. 1<br><br>**COMPLAINT** FOR<br><br>DAMAGES, MEDICAL MALPRACTICE, BATTERY, AND BREACH OF FIDICIARY DUTY<br><br>(Fed. R. Civ. P. 39; Fed. R. Civ. P. 9(g))<br><br>No. 2<br><br>**COMPLAINT** FOR<br><br>DAMAGES, CORPORATE NEGLIGENCE AND ADMINISTRATIVE NEGLIGENCE<br><br>(Fed. R. Civ. P. 39; Fed. R. Civ. P. 9(g))<br><br>No. 3<br><br>**COMPLAINT** FOR |

| | |
|---|---|
| MEDICAL DOCTOR EXECUTIVE), GREG ADAMS, JANET LIANG (ALTOGETHER "KAISER NON MEDICAL DOCTOR EXECUTIVES"), JAMS ADR, KIRK NAKAMURA, MIRRA JHANG (ALTOGETHER JAMS ADR), LA FOLLETTE, JOHNSON, DEHAAS, FESLER & AMES, BRIAN MEADOWS, MYRA FIRTH, MITZI THOMAS (ALTOGETHER "KAISER LEGAL REPRESENTATION"), STATE OF CALIFORNIA, COUNTY OF ORANGE, DOES 1-100<br><br>Defendants | SPECIFIC PERFORMANCE, KAISER INDEMNIFICATION CONTRACTUAL OBLIGATIONS OF THE STATE OF CALIFORNIA AND COUNTY OF ORANGE<br><br>(Fed. R. Civ. P. 54)<br><br>No. 4<br><br>**_COMPLAINT_** FOR<br><br>DAMAGES, KAISER, JAMS ADR, AND KAISER LEGAL REPRESENTATION FEDERAL CIVIL CONSPIRACY<br><br>(Fed. R. Civ. P. 9)<br><br>No. 5<br><br>**_COMPLAINT_** FOR<br><br>DECLARATORY RELIEF VIA FEDERAL TRIAL, DISMISSAL OF ARBITRATION PROCEEDING, AND VACATION OF ARBITRATOR AWARDS<br><br>(Fed. R. Civ. P. 57)<br><br>No. 6<br><br>**_COMPLAINT_** FOR<br><br>DAMAGES, JAMS ADR AND STATE OF CALIFORNIA'S VIOLATION OF EQUAL PROTECTION OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS RIGHTS UNDER THE FOURTEETH AMENDMENT TO THE US CONSTITUTION<br><br>(Fed. R. Civ. P. 39; Fed. R. Civ. P. 9(g)) |

2

No. 7

**<u>COMPLAINT</u>** FOR REVOCATION, AUTOMATIC REVOCATION OF KAISER FEDERAL TAX EXEMPT STATUS

(Fed. R. Civ. P. 54)

Jury Trial Demanded

Plaintiff, Pamela Lynn, and Plaintiff, Wilson Lynn, Jr., (Altogether "Plaintiffs" or individually "Pamela" or "Wilson") by its attorneys' files this Complaint against Defendants listed above (Altogether "Defendants," grouped or individually as indicated in caption) and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action concerning all Complaints No. 1 – 7 as described above.
2. Plaintiff is seeking damages, including special damages.
3. Plaintiff is seeking enforcement of indemnity contractual obligations.
4. Plaintiff is seeking declaratory relief.

**THE PARTIES**

5. Plaintiffs are a married couple who have been married for over forty-six (46) years.
6. Plaintiffs temporarily reside in Weaverville, CA due financial hardship stemming from the Complaints No. 1 -7.
7. Plaintiffs domicile is in the Woodlands, TX and they are in the transition to move the Woodlands, TX but are hindered due to this financial hardship and medically chronic condition of Pamela.
8. Wilson is the Sr. Pastor of Before Abraham was, I AM Church located in the Woodlands, TX and Pamela is the Sr. Women's Leader. This is their ministry from the LORD so their hearts are set in the Churches' location.

**FACTS**

9. In August 2019, Pamela was hospitalized for treatment of issues relating to her esophagus and digestion. She experienced trouble swallowing, digesting, and severe acid reflux.

3

10. Trusting Defendant Kaiser and Defendant Kaiser Medical Doctors, she underwent medical procedures, including and not limited to the following, which resulted in multiple Kaiser hospital encounters where she was further injured for the rest of her life and Wilson has a loss of consortium due to this.

11. From May 2019 through August 2019, Pamela underwent eight (8) endoscopies with dilation, or surgeries, which resulted in her esophagus being perforated (intentionally concealed and/or fraudulently concealed by Kaiser and Kaiser Medical Doctors) and causing her unresolved sepsis. Pamela was rushed by Wilson to the Kaiser ER located in Anaheim, CA where she was hospitalized and released with the medical injuries in 11.

12. A month later, she underwent a major esophagus surgery called Ivor Lewis and she went into a coma for over a month.

13. In this surgery, Kaiser Medical Doctors completely severed her Vagus nerve (and intentionally concealed / fraudulently concealed it from her).

14. After this surgery, Kaiser Medical Doctors went beyond her consent and placed an esophageal stent, which dislodged and injured her further.

15. In a medical appointment with Kaiser Medical Doctors, Pamela and Wilson were informed that she had this large stent put in her and that the doctor could not believe it had not been taken out yet. So, she was rushed into surgery to remove it a week or two weeks later.

16. As declared by the State of California Insurance Department, she is required every three (3) months – now four (4) to six (6) weeks due to her medical condition getting worse – to have an endoscopy with dilation and Botox to keep her alive.

17. Plaintiffs and Defendants are engaged in an Arbitration and six (6) court cases, which Defendants Kaiser, Defendant Kaiser Legal Representation, and JAMS ADR have ignored.

18. As demonstrated below in the claims for relief, Defendants have injured and continue to injure Plaintiffs contrary to State law, Federal law, and the US Constitution.

19. As a result, this case is being filed for Pamela and Wilson to obtain justice against Defendants as Dr. Martin Luther King spoke "injustice anywhere is a threat to justice everywhere."

**JURISDICTION**

**GENERAL JURISDICTION PRESENT UNDER FEDERAL QUESTIONS, DEFENDANT(S) MINIMUM CONTACTS.**

20. This court has jurisdiction of the subject matter of this action because it arises out of the Constitution and laws of the United States. As is more fully shown below, this dispute concerns the validity and enforceability of a 2019 and 2020 arbitration agreement that are both unsigned by the Parties.

4

21. Defendants have failed to produce these arbitration agreements upon demand in pre-arbitration discovery by Plaintiffs since February 14, 2024, which has demonstrated that they are nonexistent; however, the Neutral Arbitrator Nakamura (State Arbitrator) has decided, ruled, or awarded the existent of there being one via the use Defendant's production of parol evidence (2002 and 2005 enrollment or arbitration agreements signed by Plaintiff) and arguments including the parol evidence.

22. Due to this ruling in direct contradiction with the plain language of the Federal Arbitration Act of 1925, this court has jurisdiction and shall rule on this matter.

23. More importantly, this matter concerns the Defendants use of a nonbinding arbitration to make punitive rulings with the power of California law that are denying the Plaintiffs' equal protection of the law by violating their procedurally and substantively due rights under the Fourteenth Amendment to the US Constitution.

24. Furthermore, relevant Defendants have engaged in a Federal Civil Conspiracy to injure Plaintiffs under Federal law.

25. Lastly, this matter also concerns the Defendants alleged violation of their Charitable Purpose under IRS Code 501(c)(3) as a result of either of this court's holding for the Plaintiffs on either of their **_COMPLAINTS No. 1 – No. 7_**.

26. This court has subject matter, personal, and/or general jurisdiction over all Defendants because all Defendants are subject to the claims submitted by Plaintiffs in the Arbitration and six (6) cases filed in Orange County Superior Court (OCSC), which are subject to the Federal Questions briefly explained above.

27. Defendants JAMS ADR - State Arbitrator (is a part owner of JAMS ADR), and Mirra Jhang (Case Manager) - is holding the Arbitration telephonically in Irvine, CA, but JAMS ADR has offices nationwide, including one located at 609 Main St Ste 3930, Houston, TX 77002. JAMS ADR also has offices in Austin, TX and Dallas, TX.

28. Defendants Kaiser and Kaiser Legal Representation pays and employs Defendants JAMS ADR to conduct the Arbitration, which the OIA (employed and paid for by Defendant Kaiser) administratively processes and has rules for the Arbitration. Per Defendant Kaiser's IRS Tax Exempt 990 form filing in 2022, they have made minimum contacts with the State of Texas via granting $87,100 to American Heart Association Inc located 7272 Greenville Ave, Dallas, TX 75231 for the Salute Gala.

29. Defendant Kaiser has not filed their IRS Tax Exempt 990 form filing for 2023, so there can be additional minimum contacts made.

30. Per case law, Defendant Kaiser has owned and operated hospitals in the State of Texas in the past, which indicates their contacts with Texas.

5

31. Defenant Kaiser has a National Provider Identifier (NPI) number, which is 106-386-0534, and allows them to provide care to US Medicare and Medicaid patients. They obtain this number from Centers for Medicare & Medicaid Services, which is a federal government entity.

32. More importantly, in *Peters*, the United States Court of Appeals held that when Plaintiffs allege that Defendants participated in a conspiracy, a court has personal jurisdiction over those parties if a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state. That is not a difficult requirement to meet: an overt act is any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy personal jurisdiction is present. *Peters v. BASF Metals Ltd.* 61 F.4th 242 at 270 (2023); Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d at 86 (2018).

33. Applied to these circumstances, Plaintiffs allege that Defendant Kaiser, Defendant Kaiser Legal Representation (Altogether "those parties"), and Defendant JAMS ADR ("co-conspirator") participated in a Federal Civil Conspiracy (See **FIFTH CLAIM FOR RELIEF**). As a result, this court has personal jurisdiction over those parties if a co-conspirator's (JAMS ADR) overt acts (See **FOURTH CLAIM FOR RELIEF**) in the furtherance of the conspiracy had sufficient contacts with Texas (JAMS ADR three (3) Texas locations).

34. Therefore, this court has personal jurisdiction over all the Defendants.

**SUPPLEMENTAL JURISDICTION PRESENT OVER COMPLAINTS NOs. 1 – 3.**

35. Under 28 USCS § 1367, this court has supplemental jurisdiction via the Federal statutes named above, the US Constitution, and personal or general jurisdiction stated herein as all other claims (Arbitration and six (6) OCSC cases) that are so related to claims in the action (Federal Arbitration Act of 1925, Federal Civil Conspiracy law, 14th Amendment to the US Constitution, and IRS Code 501(c)(3)) within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

36. Plaintiffs ask this court to not decline the exercise of supplemental jurisdiction over the claims because

37. The claims does not raise a novel or complex issue of State law, as these claims are handled within the State of Texas;

38. The claims do not substantially predominate over the claim or claims over which the district court has original jurisdiction because the Federal Questions are central to the Plaintiffs obtaining justice;

39. The district court has not dismissed all claims over which it has original jurisdiction due to this being of FIRST IMPRESSION on the Federal Question(s); or

6

40. In exceptional circumstances, which are absent here, there are other compelling reasons for declining jurisdiction.

41. Therefore, this court has supplemental jurisdiction over the claims presented in the Arbitration and six (6) OCSC cases. The Arbitration and six (6) OCSC cases are included in their own respectively Exhibits and Plaintiffs will amend all of these claims prior to adjudicating them via this court which shall take place no later than the Case Management Conference to the extent permitted by Federal law. Complaint No. 4 will be demonstrated via application of the Federal Arbitration Act (FAA).

**FIRST CLAIM FOR RELIEF**

**DAMAGES, MEDICAL MALPRACTICE, BATTERY, AND BREACH OF FIDICIARY DUTY**

**Against Defendants – Kaiser and Kaiser Medical Doctors**

42. This first claim for relief is incorporated by reference by the seven (7) Exhibits containing these claims, but have been articulated to a limited extent in the **FACTS**.

**SECOND CLAIM FOR RELIEF**

**DAMAGES, CORPORATE NEGLIGENCE AND ADMINISTRATIVE NEGLIGENCE**

**Against Defendants – Kaiser, Kaiser Medical Doctor Executive, and Kaiser Non-Medical Doctors Executives**

43. This second claim for relief is incorporated by reference by the seven (7) Exhibits containing these claims, which shall be amended prior to the Federal Case Management Conference date as set by this court.

44. In essence, when a hospital or medical plan puts the business before the medicine or care of patient then it is corporately negligent and administratively negligent. The State of Texas has a law that bans what is called "The Corporate Practice of Medicine."

45. Applied to these circumstances, in Pamela's medical record, there are instances where the words *OVERRIDE* appear whenever a treating physician had to order antibiotics or specialty medicine. This is only one example and is not exhaustive of the words' use.

46. The point is that a physician has to override the business system in order to provide medical care.

47. A logical deduction of this process is that Kaiser physicians have to override the business programmed recommendation (software and/or artificial intelligence) to provide Patient/Pamela needed medicine and/or medical care. The recommendation could be to reduce cost for the Kaiser medical plan and/or hospital.

48. Another logical deduction of this business process is that when a Kaiser physician does not override the recommendation, then the business wins out and potentially the patient/Pamela does not get the care they needed in order to save costs.

49. Another logical deduction is this system has a built in incentive or metrics that Kaiser physicians have to report into to either be rewarded or not rewarded, which indicates a sort of Game Theory simulation.

50. Defendant Kaiser Non-Medical Executives, their CEO and COO, would be overseeing and/or approving this practice, and they also approved directly or indirectly of this software system.

51. There may be a systemic flaw for patient care that has been put in practice by Kaiser executives who were hired most likely by the Kaiser Board of Directors.

52. Line 43. through 47. to be discovered and confirmed in the pre-trial process, but our some of the logical deductions Plaintiffs have made.

53. Therefore, Plaintiffs have allegations of this type of harm being perpetrated against them.

**THIRD CLAIM FOR RELIEF**

**SPECIFIC PERFORMANCE, KAISER INDEMNIFICATION CONTRACTUAL OBLIGATIONS OF THE STATE OF CALIFORNIA AND COUNTY OF ORANGE**

**Against Defendants – Kaiser, State of California, County of Orange**

54. Cal Health & Safety Code §101833 states "any contract executed by and between the county and the hospital authority shall provide that liabilities or obligations of the hospital authority with respect to its activities pursuant to the contract shall be the liabilities or obligations of the hospital authority, and shall not become the liabilities or obligations of the county."

55. Applied to these circumstances, Kaiser is a hospital that operates in the State of California and in the County of Orange. In the County of Orange there are no county hospitals, so the hospitals are owned privately. Kaiser operates two hospitals in the County of Orange, one in Irvine, CA and another in Anaheim, CA, both of which are the hospitals where the first and second claims for relief stem from.

56. In order to operate as a hospital in the State of California Kaiser must meet the California Department of Health & Safety requirements to be issued their licensing number, which is California License Number: 550003560.

8

57. Plaintiff believe in good faith that – per the code – Kaiser may have an agreement between themselves and County of Orange and State of California, which may have Kaiser's contractual indemnification obligations as stated in the code within them.

58. Therefore, Plaintiffs want to use that obligation to help Kaiser pay for Plaintiffs entire damages and even above and beyond the California Medical Injury Compensation Act caps.

**FIFTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF VIA FEDERAL TRIAL, DISMISSAL OF ARBITRATION PROCEEDING, AND VACATION OF ARBITRATOR AWARDS**

**Against Defendants – Kaiser, JAMS ADR, Kaiser Legal Representation, and OIA**

THIS COURT SHALL GRANT DECLARATORY RELIEF VIA REQUIRING A FEDERAL TRIAL TO HAVE A JURY FIND NO AGREEMENT ALLOWING DISMISSAL OF THE ARBITRATION AND VACATION OF AWARDS PER THE FAA.

**A. FEDERAL TRIAL REQUIRED PER FAA.**

59. Under the 9 U.S. Code § 4, if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

60. Applied to this circumstance, on February 12, 2024, the Plaintiffs requested from Defendant Kaiser and their Legal Representation the production of the 2019 and 2020 Medical Plan, Arbitration Agreement, or Enrollment forms (altogether "Arbitration Agreement"), which contain the Plaintiff's signature on them. Defendants have not produced the signed Arbitration Agreement so the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, which is the case here. Since Defendants have not produced the Arbitration Agreement signed, then the court shall proceed summarily to the trial thereof.

61. Therefore, this court shall proceed to a Federal trial due to this.

**B. DISMISSAL OF THE ARBITRATION PROCEEDING REQUIRED PER FAA.**

62. Under the 9 U.S. Code § 4, if the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.

63. Applied to this circumstance, on February 28, 2024, the Plaintiffs requested Defendant Office of Independent Adminstrator ("OIA") administratively to revoke the OIA Arbitration number 18022 and suspend JAMS ADR Arbitration reference number 1200060834 ("Arbitration") or dismiss the Arbitration due to the Defendants not producing the signed Arbitration Agreement. Although, in their estimation, the OIA lacked the power to do this,

9

a jury that finds similarly that there is no agreement in writing for arbitration was made, then the proceeding shall be dismissed.

64. Therefore, a Federal trial with a jury will find that there is no Arbitration Agreement, so the Arbitration proceeding shall be dismissed. When this Arbitration proceeding is dismissed then all awards/rulings/decisions by the State Arbitrator until then will be of no legal effect or binding authority because the State Arbitrator lacks the power from a signed and enforceable arbitration agreement.

### C. DISMISSAL OF THE ARBITRATION PROCEEDING DUE TO LACK OF AN AGREEMENT REQUIRES THIS COURT TO ADJUDICATE PLAINTIFFS' CLAIMS.

65. Under 9 U.S. Code § 5, the court can only appoint an arbitrator or umpire when there is an enforceable agreement with the procedure for the appointment.

66. Applied to this circumstance, since there is no Arbitration Agreement, then this court is required to adjudicate all of Plaintiffs claims.

### D. VACATION OF AWARDS/RULINGS/DECISIONS MADE BY THE STATE ARBITRATOR ARE REQUIRED PER FAA.

67. Under 9 U.S. Code § 10, in any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) … the award was procured by corruption, fraud, or undue means…;

68. Applied to this circumstance, from the start of the Arbitration until today, March 13, 2024, Defendant JAMS ADR through State Arbitrator Nakamura has ruled all in favor of Defendant Kaiser. State Arbitrator granted Kaiser's 1st motion to strike and demurrer. In doing so, State Arbitrator did not rule that Defendant Kaiser's two (2) motions were a motion for summary judgment due to them including extrinsic evidence without any authentication and foundation thereby allowing these motions to defeat Plaintiffs' cause of action for medical battery and damages in total amounting to approximately $20,000,000.00. In addition, State Arbitrator has not included Defendant Kaiser Medical Doctors in the Arbitration who were personally served under California law.

69. Therefore, due to the above, the award/ruling/decision by the State Arbitrator were procured through corruption, fraud, and undue means as they were made contrary to California law and this court shall vacate the award/ruling/decision made by the State Arbitrator.

70. Under Fed. R. Civ. P. 9, in alleging fraud…a party must state with particularity the circumstances constituting fraud ... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

10

71. Applied to this circumstance, in order to preserve Plaintiffs' cause of action and to include the Defendants Kaiser Medical Doctors, and Defendants Kaiser Non-Medical Executives, Plaintiffs filed the six (6) OCSC cases and uploaded the First Amendment Demand in the Arbitration and called it "5000-0001." In response to this, Kaiser's Legal Representation then proceeded to upload - under the direction of Myra Firth and Brian Meadow through their Legal Assistant / Paralegal, Mitizi Thomas - different and distinct versions of the six (6) OCSC cases (excluding Defendant Greg Adams and different causes of actions) to the JAMS Portal. These are the particular circumstances constituting fraud (an act fitted to deceive another) by Kaiser which intended to deceive JAMS ADR to believing that the Plaintiffs had pled these modified six (6) OCSC cases in the Arbitration. Over Plaintiffs oral and written objections, Kaiser submitted seven (7) motions: Five (5) to compel discovery and two (2) to demurrer and strike all the uploads into JAMS Portal. Again, Plaintiffs did not plead them in Arbitration but a distinct and different version in OCSC. State Arbitrator has not sustained Plaintiffs objections, but instead proceeded with the Arbitration with the inclusion of them (Kaiser Legal Representation uploads).

72. Therefore, Defendants JAMS ADR and Kaiser committed fraud against the Plaintiffs to deny them of their rights to recovery and it was done with malice, intent, knowledge, and other conditions of these person's minds. As of result of this, this court shall vacate the award/ruling/decision made by the State Arbitrator.

73. Furthermore, this pattern where the award is procured through corruption, fraud, and undue means continues despite Plaintiff demonstrating more elements to vacate.

74. … (2) …there was evident partiality or corruption in the arbitrators, or either of them;

75. Due to the above, there was evidence of partiality (all Defendant JAMS ADR rulings made for Defendant Kaiser) or corruption (Defendant Kaiser pleading the Plaintiffs case to prejudice and injure their rights). Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

76. … (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or…

77. On February 28, 2024, Plaintiffs via email requested State Arbitrator to stay the Arbitration until Defendants could produce the signed Arbitration Agreements and as a result of this request, and also, continue the Defendants seven (7) motions schedule as described above. Defendants via email opposed Plaintiff's requests by asserting legal arguments based on 2002 and 2005 enrollment/arbitration agreements signed by Wilson Lynn, Jr. Plaintiffs responded that these outdated arbitration agreements were irrelevant and prejudicial and that 2019 and 2020

11

agreements are necessary for this as this is the time period where Plaintiffs allege Defendants injured Pamela (See **FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF**).

78. Due to the above, State Arbitrator, as determined by a federal judge, [was/were] guilty of misconduct in refusing to postpone the motions hearing or even staying the Arbitration until the production of the Arbitration Agreement. Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

79. Continuing the narrative of February 28, 2024, within a total of an hour and a half including the emails above, State Arbitrator via email wrote "In light of the signed agreements and the other arguments set forth by Mr. Meadows (Defendants Kaiser Legal Representation), I must again deny the request to dismiss the arbitration by Mr. Zamora [Plaintiff's counsel]" and in doing so, created the 2019 and 2020 Arbitrations Agreements from the 2002 and 2005 enrollment/arbitration agreements. Afterward, Plaintiff objected to this ruling as without the production of the Arbitration Agreements the State Arbitrator's ruling(s) have no legal binding effect and that Plaintiff would file this lawsuit in Federal court to have a federal judge rule on the existence of an arbitration agreement absent the Defendants production of the signed Arbitration Agreements.

80. Due to the above, State Arbitrator, as determined by a federal judge, [was/were] guilty of misconduct in refusing to dismiss the Arbitration absent the signed Arbitration Agreements, and a result, this court shall vacate the award/ruling/decision made by the State Arbitrator.

81. On March 1, 2024, Plaintiff ordered the State Arbitrator under California law to rule on their objections, including a new one that the 2002 and 2005 enrollment/arbitration agreements were parol evidence, which barred them from use as evidence, and amend his ruling with the exclusion of this parol evidence. Plaintiffs also opposed seven (7) motions of Defendants Kaiser in this communication as well based on the objections and order to amend his rulings. State Arbitrator overruled the objections and did not amend his ruling to exclude the parol evidence, and ignored Plaintiff opposition to the Defendants seven (7) motions based on Plaintiffs challenges for Defendant not producing the Arbitration Agreements. State Arbitrator denied Plaintiffs request for continence of the motions schedule (Defendant Kaiser's reply, 3/7/24) and Motion Hearing, 3/15/24).

82. The above demonstrates how the State Arbitrator refused to hear evidence pertinent and material to the controversy, which is that there is no signed Arbitration Agreement and that he did not exclude parol evidence which is a matter of substantive law and not subject to the Arbitrator/Judge weigh on relevancy restriction such as probability and prejudice to the parties engaged in the lawsuit. Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

83. … (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

84. Applied to this Arbitration, State Arbitrator has exceeded his powers by making rulings absent the authority given to him by having an Arbitration Agreement signed by the Plaintiffs. Therefore, this court shall vacate the award/ruling/decision made by the State Arbitrator.

**FOURTH CLAIM FOR RELIEF**

**DAMAGES, KAISER, JAMS ADR, AND KAISER LEGAL REPRESENTATION FEDERAL CIVIL CONSPIRACY**

**Against Defendants – Kaiser, JAMS ADR, and Kaiser Legal Representation**

**DUE TO THE ARGUMENTS ASSERTED ABOVE PER THE FAA, THIS PROVES THE RELEVANTS DEFENDANTS' PERPETRATION OF A FEDERAL CIVIL CONSPIRACY AGAINST THE PLAINTIFFS.**

85. Under Fed. R. Civ. P. 9, in alleging fraud…a party must state with particularity the circumstances constituting fraud ... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. In *Leisure Founders*, the trial judge dismissed plaintiff's conspiracy to commit common law fraud claim for failure to comply with Fed. R. Civ. P. 9(b), finding that it did not state "the circumstance constituting fraud… with particularity". *Leisure Founders, Inc., v. CUC Int'l, Inc.,* 833 F.Supp. 1564 (S.D. Fla. 1993).

86. Applied to these circumstances, the above discussion for vacation of the awards/rulings/decisions has complied with Fed. R. Civ. P. 9(b).

87. The *Pinkerton* doctrine (conspirator is vicariously liable for substantiative acts committed in the furtherance of conspiracy which are foreseeable) is applicable in civil cases as it is in criminal cases. *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983); *Pinkerton v. United States*, 328 U.S. 640 (1946).

88. Applied to these circumstances, Defendants Kaiser, Kaiser's Legal Representation, and JAMS ADR have engaged in a conspiracy to commit fraud against the Plaintiffs rights to recover for their injuries. All of the acts described in the vacation of the awards are the substantive acts that these Defendants have committed in the furtherance of this conspiracy which are foreseeable because they all injure the Plaintiffs right to recover on claims asserted and also this conspiracy substantive acts remove liability from Defendant Kaiser.

89. Therefore, these Defendants shall be held responsible for their damages caused the Plaintiffs.

**SIXTH CLAIM FOR RELIEF**

13

**DAMAGES, DEFENDANTS JAMS ADR, AND STATE OF CALIFORNIA'S VIOLATION OF PLAINTIFF'S EQUAL PROTECTION OF PROCEDURAL AND SUBSTANTIVE DUE RIGHTS UNDER THE FOURTEETH AMENDMENT TO THE US CONSTITUTION**

**Against Defendants – Kaiser, JAMS ADR, Kaiser Legal Representation, and State of California (only to this Defendant no damages sought in this sixth claim for relief)**

AS A RESULT OF THE COMPLAINTS ABOVE AND THROUGH THIS ARBITRATION, DEFENDANTS HAVE (IN THE POWER OF THE STATE OF CALIFORNIA) DEPRIVED THE PLAINTIFFS OF THEIR LIFE, LIBERTY, OR PROPERTY, WITHOUT DUE PROCESS OF LAW AND THE EQUAL PROTECTION OF THE LAWS WITHIN ITS JURISDICTION.

90. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

91. Applied to these circumstances, the State of California has given an arbitrator authority to make binding, legal awards/rulings/decisions in the presence of a signed arbitration agreement thereby giving Defendant JAMS ADR state power. In Defendant JAMS ADR exercising this state power without a signed Arbitration Agreement it has abused this power – the same is true with the discussion of vacating awards and Federal Civil Conspiracy – and has deprive any person of life, liberty, or property, without due process of law (an actual court hearing this matter) and has denied the Plaintiffs within its jurisdiction the equal protection of the laws because Defendant JAMS ADR rulings are injuring the Plaintiffs and not protecting them.

92. Therefore, this court shall not allow Defendant JAMS ADR to abuse state power and deny the Plaintiffs due process of the law or equal protection of the law. In doing so, Plaintiffs ask this court to dismiss the Arbitration and hold relevant Defendants liable to the fullest extent of the Supreme Law of the land, the US Constitution.

**SEVENTH CLAIM FOR RELIEF**

**REVOCATION, AUTOMATIC REVOCATION OF KAISER FEDERAL TAX EXEMPT STATUS**

**Against Defendants – Kaiser**

**DUE TO THE ABOVE, PLAINTIFF'S REQUEST THIS COURT ENGAGE THE IRS TO AUTOMATICALLY REVOKE DEFENDANT KAISER'S FEDERAL TAX EXEMPT STATUS.**

93. Under 26 USCS § 501…Exemption from taxation. An organization…shall be exempt from taxation…[any] Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable [purpose]…

94. Applied to these circumstances, Defendant Kaiser is a tax exempt organization under this federal statute and they are a nonprofit corporation organized and operated exclusively for a charitable purpose. Per their 990 form filed in 2022, Defendant Kaiser's charitable purpose is:

95. TO PROVIDE HIGH-QUALITY, AFFORDABLE HEALTH CARE SERVICES TO IMPROVE THE HEALTH OF OUR MEMBERS AND THE COMMUNITIES WE SERVE.

96. The Plaintiffs have not received high-quality, affordable health care services to improve their health (as they were members) because Plaintiffs have been subject to catastrophic injuries stemming from Medical Malpractice, Battery, Breach of Fiduciary Duty, Corporate Negligence and Administrative Negligence, Federal Civil Conspiracy, a corrupt, fraudulent, and undue means Arbitration procedural and substantive process, and 14th Amendment violations, which in total amount to Defendant Kaiser not meeting their charitable purpose.

97. Therefore, this court shall engage the IRS via the Southern District of Texas to come down the hall and revoke Defendant Kaiser's tax exempt status immediately as they should not enjoy the privileges and immunities granted to nonprofit / public charities who execute their charitable purpose.

**PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE**

98. A valid case or controversy exists sufficient for this court to declare the rights and remedies of the parties in that the Arbitration is ongoing and the State Arbitrator continues to make awards/rulings/decision absent an Arbitration Agreement being produced.

99. The Plaintiff has the requisite standing to request relief in that the FAA, Federal law, and the US Constitution are being challenged by the Arbitration and the State Arbitrator and Defendant reliance on these nonbinding legal rulings.

100. This controversy is ripe for determination at this time because the Plaintiffs rights for relief are currently being prejudiced by the relevant Defendants.

**PRAYER FOR RELIEF**

For the reasons set forth above, Plaintiff respectfully requests that this Court enter a judgment against Defendants, granting Plaintiff the following relief:

1. This court render a declaratory judgment providing that the Declaration Sought above;
2. This court to order a jury trial to establish that there is no signed Arbitration Agreement;
3. This court to dismiss the Arbitration;
4. This court to exercise personal jurisdiction over the Defendants;
5. This court to exercise supplemental jurisdiction over the claims requested;
6. The entry of judgment in favor of the plaintiff on each and every cause of action;
7. The award of the requested amount of $490,000,000.00;
8. The award of costs of the Arbitration, suit and attorney's fees, and
9. Such other relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: March 13, 2024

Before Abraham was, I AM

By:  /s/Steven Zamora, Esq.
     Steven Zamora, Esq.

9450 Pinecroft Dr. Unit 9834

The Woodlands, TX 77380

E-mail:    stevenzamora@beforeabrahamwas-iam.org

Attorneys for PAMELA LYNN, WILSON LYNN JR.

16